Inbank reconsideration of the case of Degas v. Gilroy Garlic Festival Association et al. Counsel ready? You may proceed. May I please the court, your honor? Counsel? My name is Randolph Hammock. I am the trial attorney in this case for the plaintiffs. I'm just going to make a few brief sort of opening comments and I'm going to basically turn it over to my co-counsel, Mr. Lichtenstein, to talk about the legal issues. With all due respect to this court, this is a case about discrimination, pure and simple, nothing more, nothing less. What is this discrimination? Law is discrimination. Bikers. This is a case about biker gangs. My client, Mr. Polker, is a pharmacist. He's a member of a biker gang, according to the respondents in this case. And I think the three things I would like to observe from a factual standpoint, because I'm the one that's been in this case for seven and a half years since this case has happened. Seven and a half years ago I've been in this case. And there are three factual observations I find somewhat disturbing and I think that this panel, with all due respect, should look at. Number one, the dress code at issue. It is a super, super secret dress code. To this day, seven and a half years later, none of us, all the lawyers in this case, don't even know what this dress code is. If you look at the record, when I took the deposition of all the officers involved in this case, basically we all agreed on one thing. Let me ask you something. It turns out I have a super secret dress code too at my house. If people show up, I have a big party, and people show up improperly dressed, I ask them to leave. And if they won't leave, I call the sheriff. And the sheriff makes them go away. That's perfectly fine. Your Honor, you live in a public park. How is this case different? It's a big private party. They can have whatever code they want. Why not? It's not a private party, Your Honor. It's in a public park. It's funded with public funds. The security that they provide is through the Gilroy Police Department, which they pay for. It's open to the public.  Your case hinges on a determination that the festival is a public event run by the city. If we find against you, as a district court found against you on that point, then you lose. The district court did not find against me on that point. With all due respect, I'm sure the district court. It's one of the few things they got right. Didn't they find that the association is not public? No, they found that there was sufficient state action on behalf. That was one of the issues. I thought the term was arguably. Is that not the case? Judge Ware's opinion? I believe Judge Ware found that there was sufficient state action on behalf of the city of Gilroy. And you're not arguing that the association, the Garlic Festival Association, is a state actor, are you? No, I've always argued that. In fact, I've always felt there was a close nexus. But you lost on that. Excuse me? You lost on that. I don't know if he ever addressed that issue, because I think he said, I don't need to address that issue because it's not protected speech anyway. Well, I'm troubled by Judge Ware's even use of the word arguably, because I don't see the Monell violation here. The police officer is out of the case, so there's nothing left except the city. What is the Monell violation in this case? Well, they were doing it according to the express custom and practice of the city of Gilroy. Well, what do you have in the record that shows that it was more than just this time? Is there anything in the record that shows that there was some policy to always remove people from the Garlic Festival whenever they violated this policy? I mean, that would have to be your Monell policy, right? What's in the record, and don't you have the burden to show the policy? There was no other incidences besides this incident. Well, isn't that the end of the case? No, it is not. Why not? One incident is sufficient. Not by a policymaker. Bergman was not a policymaker. You're talking about the Gilroy police employees on the scene and whether you can impute liability to Gilroy under Monell. Frankly, I never saw the Monell issue because it's never reallyóI know it's been discussed, but I've always felt that the court was consistent, and even the Ninth Circuit panel that recently heard this case really did not address the Monell issue. Well, they skipped right to the constitutional issue, which troubled me as well because it seems to me that the general policy, the ethic of our judicial analysis, is always to try to decide a case on any ground other than the constitutional issue unless we have to. And so that's why I raised the question, and I'm not hearing a very good response yet. Here are the facts, and the facts are reallyówe're really not in great dispute. The facts were that the city contracted withóthe festival is a private organization in its purest sense. It has an incorporation and things of that nature, but every year they rent a city park. They hire security from the city, and they have a very extensiveótheir lease requires them to actually hire and pay for city police officers. But that's security. Right. Zero in on the dress code. What is the evidence that they had a policy, a county policy with respect to the dress code? Because that's what was in the record. When we took the officers' depositions, they said this was the express policy that was decided by the Gilroy-Darling Festival Association. Can I go back on that because the question under Monell is the public entity's custom and practice as blessed by somebody in a supervisory capacity. Let me just read you the closest I found to that, or I think the only testimony. Now, maybe there's more, and I'm happy to. Sure. I'd like to be enlightened. But basically they're talking with Officer Bergman, is it, who's not a party but, of course, works for the city. Do you recall receivingóshe says this is at Deposition 33, ER 33. Do you recall ever receiving any type of directive or order from the supervisor of police within the Garlic Festival as to whether there was a dress code? This is what it is. What do you do if someone is in violation? Answer. We had briefings generally before the Garlic Festival, which could be rather difficult because we had people coming and going at different hours. But they would basically give parameters of the dress code, and we were trying to exclude group clothing that could inspire conflict. In your view, does that testimony alone meet the Monell requirement? Yes, it does, Your Honor. And, in fact, Sergeant Kloot's deposition I think is the more critical deposition. I think it's important to note that he had a dual capacity. He was head of security of the festival. He was also an acting officer of the city of Gilroy Police Department. He acted in a dual capacity at all times at the fair. So what? He wasn't on the job. He can moonlight as a bike repair guy when he's not on the job, right? But the policy has beenóin fact, the testimony was consistent. Every year they've had the Garlic Festival, the head of security is from the city of Gilroy. Well, there's nothing unconstitutional about that, so you've got to zero in on what's unconstitutional. So where is there any evidence in the record that more than this one incident, on more than this one occasion, Gilroy enforced a dress code? There was nothing in the record about that. Well, then why isn't that the end of it? Because one incident is enough, the cases that were cited. A single incident is enough to justify a 1983 auction. But where do you have the cityóthis is where I come back to the testimony I read you. Where do you have evidence of a city supervisor enforcing it on behalf of the city, telling the officer, not the officer alone, but somebody in a supervisory capacity that gives it a custom and practice? I agree it could happen on one occasion, but the question is whether it rises to that level here by a city directive. Because you look at the involvement between the city and the Garlic Festival. I know they would love to cut these fine hairs and say, well, they're totally distinguished. In other words, for this four hours, Sergeant Kloot is actually still acting. He's only acting as head of security. He's not acting as a Gilroy Garlic Festival. But if you note, when I took Officer Bergman's deposition, she said that she would defer. You make it sound like it's trivial, but let's say, for example, he falls on the job while he is working with the festival. He trips and falls. Is he covered by workman's comp? I'm not a worker's comp attorney, so I wouldn't know. But these are important questions, whether you're on the job or you're not on the job, whether you're working for the city or you're on your own time doing something. These are not trivial distinctions. I agree. I focused on the actual contract. Why do you insist on talking when I'm talking? I apologize, Your Honor. I apologize. It's really not a good idea. I mean, these are distinctions that are important in the law, whether somebody is, whether this is a policy by the city or by a private party, whether this gentleman was working for the city at the time or whether he was working for a private association. I mean, you talk about them as if they make no difference at all, as if these distinctions are just technicalities. But, of course, they're not. I mean, what if while working as a head of security, what if there had been some sort of incident of gunplay and he got shot? Would that be something that the city would be held responsible for? I can't answer that. You don't know the answer to that. There's no obvious answer to it. I mean, probably the answer is not because he's working as a private citizen. Now, what is it that you have in the record that makes this any different than the cops being called to a private party and being told these people here are not behaving the way we want our guests to behave? What do you have in this record? There's six points in the record. Where are you? I'm reading. Okay. Number one. Where are you reading from? I'm reading. Well, this is one of the briefs. This was my summary judgment opposition in the lower court. That's a lawyer. Do you have, like, evidence, you know? Yes. Deposition? Yes. Where is that? I'm going to refer to it, if I may, Your Honor. Okay. Number one, the festival is held on public grounds. No, no. Where is the piece of evidence that supports what you're about to say? It's in tab 17. Okay. I'll show it to you. Okay. And it's... Hold on a second. Yeah. All right. On tab 17, on pages 7 and 8, I note the six different points I felt... But 7 and 8 is your writing. Right. And then it's supported by the exhibits attached there, too. What I want you to tell me is where in the exhibits is the stuff you're talking about. Okay. Where is the actual evidence that comes out of the mouth of witnesses? First of all, it would be in the declarations that were signed initially back in... Page number, line number. Very good. All right. Or you can tell me the name of the declarants. I will do that, if I may. All right. The various declarations that were filed initially in the case on the initial motion to dismiss, and those were going to be tab 5, and it's going to be pages 12 through 14. That's the declaration of Sergeant Clunt. All right. Page 15 and 16 and 17 is very important in addressing the concerns that you have. That's the declaration of Mr. Nichols. Okay, good. Line... Page number, line number. All right. All right. Okay, first of all, page 16, tab 5, lines 5 through 10. Okay, I'm with you. It's a public park. It's held. They have to have an application. There's an application that's attached to it as exhibit A. Paragraph 6 talks about the integral details of the lease agreement, where they're required to have security. The city of Gilroy supplied police department security. Members of the police department are there to be paid by them, and they talk about it being a mixture. And then here's the key. How does any of that help you? You've now cited some facts. The city can rent property, like it can rent an auditorium for a private event. It can rent a park. San Diego has a park there, and they allow people to use for private purposes. Judge Scanlon and I have a case. Balboa Park. Balboa Park. Thank you. Very common. And, of course, when they have a park, they may insist to have their own security people police it just to make sure the property is not damaged. What's the matter with that? Here, I suppose, it's because they specify to be the city's police, not a private security. That, to me, in my mind, is the key distinction. Because they require the city of Gilroy to provide. In other words, the city is saying, we're going to rent you this park, but you also have to hire our police department for $10,000 a day to do this. Where is it set forth that there is a policy that the security folks be on the festival board? I think it might be more of a custom. I think at least the head of security, it's been custom, and that's in the record. The custom has been for all the years of the festival that some police officer is head of security. So your argument is that the city has become so involved in this because, A, by custom, they've always got a city law enforcement official in the management of the festival and that they always hire specifically not private security but public security ostensibly off-duty. Exactly. And one other thing I'd like to know now. Where is it? I asked the question before. I understand festivals, as the chief judge was saying, normally have security. You would expect them to. So the issue in this case, however, is what the security is focused on doing. Where is the evidence that, aside from Officer Bergman's deposition testimony, is there anything else that suggests that the city had any policy or practice with respect to enforcing a dress code as opposed to rowdy behavior or illegal parking or anything else that a security officer might have to be involved in? Yes. And if you can go back to the question. Let me add to that question because I'm wondering if the custom and practice of the city that Judge Ware found was arguably could lead to a Monell violation. Does it have to be limited to the dress code or is it the city custom and practice of enforcing every code or requirement that is applicable to the Garlick Festival? I'm not sure you make that clear in your argument. It's the latter. They were there to enforce all laws, including the dress code. That's the state of the evidence. So, I mean, should we just be focusing on dress code or cleanliness, littering, drinking? I mean, it seemed to me the policy was a lot. What they were there to do was to enforce anything that the Garlick Festival had as a rule or requirement. If I may, Your Honor, address that concern. My clients were doing nothing else wrong but violating the dress code. Well, I understand that, but I'm following on Judge Fischer's question because he asked you about specifically the dress code, and I think the evidence is pretty clear that this is the first time that the dress code created a problem. But the evidence is also clear that the police were taking care of other incidences. I have no doubt about that, even though it wasn't in the record. I don't quarrel with that. It is in the record. There's deposition testimony from Kloot that says that he had previously ejected a Hells Angel person for having a fight and ejected him from the Garlick Festival, which would be another violation of the Festival Association's rules. So there is something in the record. To me, this seems to be more of a question of fact, which Judge Ware elided. He just didn't really answer this question or apply the Seton test correctly. If I could get back to my question, whether it's broader or narrower, I just want to know whether there is any evidence besides Officer Bergman's testimony that the city, to the extent it had a customer practice, was aware that there was a dress code to be enforced. It was the declaration of Richard Nichols, which is in one of the exhibits on tab 5, lines 15 through 17, paragraph 10. He then talks about the festival instituting this dress code, and he talked about motorcycle clubs and gang colors and things of that nature. Who was Nichols? I thought Nichols was chair of the festival. He is chair of the festival. The question, though, was who at the city knew of the dress code? Sergeant Kloot. And Sergeant Kloot was there as head of security? I'm arguing in a dual capacity. And let me tell you, this is one important fact. Now I'm going to turn it over to Mr. Lee, if I may. They like to say that Sergeant Kloot is just private security and Officer Bergman is not to defer to him. She was very clear in her deposition. She would completely defer to everything that this private security officer would say, which is totally in contradiction to reality. So what? So what? If I call the sheriff on my property because one of my guests has acted improperly to another one of my guests, the sheriff will do as I say. If I say this person is here on this property, is no longer welcome to be on my property, and he won't leave, the sheriff will take him away. That's the end of the matter. Why wouldn't a police officer, when called to the scene and be told by a representative of the owner of the property, of the renter, I mean, they're renting the property, this person is no longer welcome here, is no longer has a license to be present, and won't leave voluntarily, why wouldn't the sheriff or whatever the police officer follow that without questioning the motives, without saying, gee, I think we have a legitimate motive, or you're being arbitrary, or, you know, the guy really didn't misbehave that badly, you really ought to let him stay. He wouldn't do that. Why would the officer here, the uniformed officer, do anything other than what the representative of the owner tells him to do? But here she was doing it clearly because he is a sergeant and her immediate supervisor. That's the reality of the situation, whether you don't want to accept it. Let's accept that. I understand your point that he's there, in your view, in a dual capacity, both on behalf of the department, the city department, and as this adjunct to the private garlic festival, but then the question under Monell would become whether he has policymaking authority for the city to endorse or bless this policy. Do we have any evidence of that in the record? Again, the only evidence we have is that the head of security has always been, by custom, an officer, not just some rank-and-file officer, you know, sergeant, captain, somebody in some higher level, has always been the head of security. Now, you said in some unspecified way that you want co-counsel to argue. You also have eight minutes left. So I'm going to, if I may turn it over to him. If you want any rebuttal, you're going to have to make it out of that. All right, I'm going to actually turn it over to Mr. Leisenthin. He wants to address some issues. Thank you very much. Thank you. May it please the Court. Alan Lichtenstein from the ACLU of Nevada. I certainly understand the Court's reluctance to take on constitutional issues if unnecessary, but since the First Amendment issue was the one that the panel did rule on, I think it would be remiss. Well, but that opinion is now vacated. It's gone. And the question for us is we're standing at the starting gate again. And the question is, do we have to resolve a constitutional issue? And Justice Kagan, I don't think, was expressing a personal preference so much as a constitutional imperative. It's what Article III judges do. If we can avoid constitutional questions, we should try to do so. That's a fair statement. I don't mean a personal preference, but a policy preference that constitutional issues don't get reached unless necessary. Why is this anything more than a private dispute that resulted in your clients being asked to leave a private event, and when they wouldn't do so voluntarily, they called the police and they said escort them off the property? Why isn't that? If that becomes state action and the police have become responsible for every decision of a private land owner to eject somebody from their property, then the police and the city become responsible for all the decisions, maybe just or unjust, all these private decisions that people make that cause them to ask people to leave their property. Well, the question ultimately becomes, is it a purely private event, or does it have some overlay of public action and state action? And clearly Mr. Hammack is in a much better position to resolve those if the court is not really concerned at this point. As far as you're concerned, if this is a private event, that's the end of the case, right? If, you know, whether it's a matter of law or a matter of fact, let's say if there's a determination that this is a private event, that's the end of the case, right? You lose. If there is no state action, that would be the case. Well, but that takes it, no state action is a final conclusion. If this is a private event... It still may be state action. Of course it's state action. When the police come in and say, we're going to escort you out of the property, that of course is state action. Because you've got a person with a uniform and a badge and a gun there enforcing the will of the property owner. So that's why I'm asking the question very specifically. If this is a private event, if, then the fact that state action doesn't make any difference, because at that point the decision to eject is no longer attributable to the city. And you lose. I would agree with the caveat that, and again, thinking about the case we had, which is the Venetian case talking about the private sidewalk versus public sidewalk. It's not simply a question of whether someone is private or public, but what is the particular function. So if it is... You're fighting the hypothetical. Hmm? You're fighting the hypothetical. I'm saying if it is determined that this is a private event, that's the end of your case, right? That would be the case under that circumstance. And what do we do about the fact that the district judge did not resolve that preliminary question? It would seem to be one that is required to be remanded. And that would be the suggestion that I would make. Do you want to save four minutes for rebuttal? Oh, please. We'll hear from the city. Oh, I'm sorry. We'll hear from, I suppose, the city and whoever is going to go first on your side. Please identify yourself and the party you're representing. Good morning. My name is Greg Simonian, and I represent the Yale Ray Garlic Festival Association. May it please the court. The Gilroy Garlic Festival is a nonprofit organization, a private nonprofit organization, whose mission is to provide fundraising for local charities. That's the purpose of the Gilroy Garlic Festival. It's the biggest thing that happens in Gilroy all year. I would say so. I would say so for three days. You can smell it from miles around. From the freeway. And so for three days, you have over 100,000 people that come to the town of Gilroy, and they come into this part of Christmas Hill Park, which is closed off, and it's a small, confined space for three days. And it's our primary responsibility to make sure that the tens of thousands of men and women and children and the volunteers and the people who attended are kept safe, because we do have actual notice of incidents going back to the mid-1990s of violent conflicts, and it is our legal responsibility to make sure that we take reasonable and appropriate steps to make sure things are safe. And you do that by maintaining a close relationship with the Gilroy Police Department. Isn't that right? Isn't that what the record shows here? For quite some time. A close relationship in a very general sense, but I wouldn't say that in terms of a close nexus regarding a state action test. I think that this case is. . . Does the record reflect whether you've ever retained private security other than the Gilroy Police? They do retain private security in addition to the. . . Is it in the record? This is something that has developed since 2000. So it's not in the record. All we have in the record is that we have the city of Gilroy Police, and a sergeant who acts as the head of security. Right. And usually there's cooperation with the California Highway Patrol, the sheriffs, and the local police. Counsel, it is very important when you get asked a question not to answer with things that are not in the record. We are not asking about the world at large or what's in your head or what you secretly know. Our questions are directed to matters in the record. The correct answer, if something is the case but is not in the record, is to say it's not in the record. You might ask permission to disclose it anyway, which we will deny probably, but you have to make it very clear. Do you understand that? I do understand your question. Okay. You may proceed. I'm sorry, there was a. . . It was my understanding, however, Counsel, from the record, that it is not always the Gilroy City Police who are involved, but other police departments as well. For example, yes, the Highway Patrol. Is the Highway Patrol a defendant in this case? No. As I recall, the Highway Patrol . . . never mind, it's not in the record. There's a lot of time you spend getting to the festival, and the Highway Patrol mans those posts and stuff, right? Correct. The Gilroy Police also, when they're providing security, they wear their uniform. This is true. Their badge. This is true. Their gun. This was the case with Officer Bergman. That's correct. And Sergeant Klug is her supervisor? Sergeant Klug, in his capacity as a Gilroy policeman, would be a sergeant and then a supervisor, but that was not the case. The record reflects a support with Counsel for the plaintiffs, argued that the person who sits on the management staff of the festival for security has always been somebody of rank, that is sergeant or above? It has been someone who has been . . . the record is that it's somebody who has had involvement in the Gilroy Police Department. That wasn't my question. My question is whether it's rank. A police officer in a quasi-military organization such as a police department, rank has significance. So does the record reflect whether or not any person lower than a sergeant has fulfilled the function of the security part of the management of the festival? It does not. Okay. Isn't it also clear in the record that the record shows that the police officers were there basically in performance of their security duties to enforce, whether it be a rule of the festival, a violation of a county ordinance or city ordinance, or a violation of state law? I think that's correct. And the dress code was something that was developed over time, I gather, by the festival. True. In response to the 1996 stabbing, that's what prompted the development of the dress code to avoid a conflict between rival gangs. That's correct. How do you actually define the dress code? The dress code is defined in the Declaration of Richard Nichols, which indicates gang-related colors or gang-related insignia, including motorcycle gangs. And how long would you say that that policy, or whatever you call it, how long has it been in effect? Since at least 1996, when the stabbing occurred, and they had to close the festival early. Is there any evidence in the record that the uniformed police, not the security who were playing clothes, went around the festival stopping people for dress code violations? Not other than what we have here in this specific incident between Officer Bergman and Mr. Kloop. But there is testimony. The answer is no? Correct. But isn't there testimony that if the officers saw a violation, they would report that to the festival? Sure. Yes. I'm sorry. So the evidence is that if a uniformed officer saw somebody with what the officers thought was a dress code violation, they wouldn't stop the person, but they would report them to the owner? Is that what it is? Go to the security people? Yes. And the security person would then make a decision as to whether or not the person can stay or go? Yes. And the officer would then carry out that decision? Correct. If they called for police assistance, such as this case here, then yes. So if the person takes off their jacket, that's fine. If not, they're asked to leave, that's fine. If they don't, if they refuse to leave, they call in the office or something? Yes. Okay. What are the factors that in terms of, I think the district court found that the Garlic Festival was not a state actor, correct? Correct. All right. And based on that, they are leasing a public park, which would be a traditional public forum. So those factors weigh against you in that. Is that not correct? I don't believe so. For the purposes of the Garlic Festival, it is a private event held on public grounds, but it doesn't take on the, it doesn't become a public forum. Well, it doesn't, but you have to look at different factors to decide whether, you know, if in fact, let's say that wearing the vest is either pure speech or expressive conduct or whatever, and the Garlic Festival is leasing a public forum and is regulating speech, does that weigh against the district court's finding that as a matter of law they're not a state actor? How would we look at that? I think it's a separate issue, and I believe the way Judge Ware addressed the issue was to look at state action as a threshold matter to see if he had jurisdiction to consider the subsequent constitutional issues on expressive conduct. And his ruling as to the Garlic Festival was there's no state action here, and so I don't get to the question. Well, what, why, what, what's the, what, as a matter of law, what are the facts that say that there's no state action here? To me, that seems a little closer with regard to the Garlic Festival than the Monell issue. Yes. What you have is a circumstance that is virtually identical in its facts to the Lansing case out of the 6th district, out of the 6th circuit, and Judge Ware, in his opinion, didn't rely heavily on the Lansing case. This honorable court in Lee v. Katz also made reference to the Lansing case and the importance of understanding that just mere cooperation with the police agency is not enough to trigger state action, because if that is, then every private event like the Garlic Festival becomes a state actor, and I think that's what, in Lee v. Katz, that's what the point was. In Lansing, that's what the point was, and that's our situation. Counsel, Mr. Lichtenstein indicated that he would be open to a remand for fact-finding on the question of whether this was a private event or not. What's your response? I believe that's already been determined. It's a private event. Was there a finding by the district judge? There was no specific finding. He went to the opinion and said there is no state action by the Garlic Festival. This was a summary judgment ruling, correct? Yes. There was no factual ruling by the court, no findings of fact? Correct. What is this showing, though, with respect to private event? Well, you have the permit application, which is part of the record, and I can direct you to that, but it's part of the declaration of Richard Nichols on summary judgment. That permit application is virtually identical to the permit application in the Lansing case. Well, I'm a little doubtful, like Judge Callahan, or I guess skeptical about whether or not the Festival Association is, in fact, not a state actor, as Judge Ware found, because under the Sutton test, something that would otherwise be seen as private conduct can, with something more, become public conduct. And we have cases that say that private conduct, Brentwood Academy, if it's pervasively entwined with regulation, or if they're performing a public function, that they take on a public character, and they become a state actor. And it seems here that we have a situation where this so-called private actor is in the city's public park, creating probably the city's largest promotional event, and promoting its most important agricultural product. And the association creates rules, but the city police enforce them. It seems to me that it's very entwined with the city of Gilroy. What's your response to that? I would say that, again, looking to the Lansing case for guidance there, and also just in my look at the Ninth Circuit cases that have found state action, the cases that have found state action, like the Howerton case, the Traver case, speak in terms of an active and a significant amount of police intervention. And the cases that have not found state action, the Collins case, Rivera, Van Ort, are really nothing more than mere cooperation with the police agency. And so I think the dividing line is, is this mere cooperation, which is what we say it is here in the context of this case, or is this active and significant police involvement, which, based on our facts over here, they do not match up in terms of... Why do you just say that it's just mere cooperation, if you can say that? What characterizes that position? Because in this case, you have Mr. Kloot, who is acting as the volunteer chair of security, and he is in his straw hat, Hawaiian print shirt, and shorts with a badge that affiliates him with the Garlic Festival. And then he asks Officer Bergman to come over and to escort the folks out of the festival, and she describes that in her deposition as just a standard police contact. And when I read that in connection with the Lansing decision and some of the other cases out of this circuit, that is mere cooperation, but it doesn't rise to the level... Well, there's a suggestion that because he was her supervisor when he's in uniform, that his request carried special force, that she wouldn't have been willing to contradict him, for example. What do you say to that? Well, I understand the argument, but there's nothing in the record from Officer Bergman that the reason that she followed through with the order was because Mr. Kloot also happened to be a sergeant with the Gilroy Police Department. That's not in the record and not part of her testimony, nor is it part of Mr. Kloot's deposition testimony. And at this point, your honors, I would turn it over to counsel for the city of Gilroy. Thank you. I would just ask that the court affirm the district court's grant of summary judgment in favor of the Gilroy Garlic Festival Association. Thank you. Good morning, your honors. Mark Strombotny, counsel for the city of Gilroy. Your honors, from the city's standpoint, there are four separate and independent reasons why the city should be dismissed from this case. First, of course, is the fact that it's our argument that there was no state action by the city in this context. Secondly, that there is no liability under the Monell test. Let me say that. A police officer in uniform, on duty, performs her law enforcement function by escorting these people off the property. She was getting paid at the time, right? She was on duty. By the city. Correct. She was on duty as a police officer. She had stumbled and fallen or, God forbid, gotten into a gunfight or anything of that sort. She would have been covered by workman's comp. You know, she was on the job, right? I believe that's correct, your honor. Is it possible for you to say there was no state action? I think there is a distinction here, and I'll explain why. The officer did not escort these people off the property. What occurred was is that Mr. Kloot asked her to go ask these people to return to the front gate, which she did. But the record is clear, and I can cite... When somebody with a uniform, a badge, and a gun asks you to escort, to follow them someplace, most people do. Most people do not just because they're impressed by the uniform. They do because they're afraid that if they say no, they're going to next find themselves on the ground, face down, with handcuffs on. That's correct. So I think you're slicing the salami mighty thin here. Well, I think it's an important slice, your honor, because when the officer asked these people to return to the front gate, the question is, is that for the purpose of maintaining the peace, which is not safe? What if they said, no, thank you, we'd rather go and eat some garlic steak? What would have happened next? It very likely would have escalated to where she would have exerted whatever force necessary to return them to the gate. But what occurred at the gate... I think your slice of salami is getting even thinner. Well, I think... I think you have to accept the fact that when an officer of the law exercises her authority with a badge and a gun and a uniform, and with implicit self-worth, that is state action. That is the action of the city. Whether they can be tagged with the policy of the dress code is what we are here to determine, but I think it's very hard for you to claim, oh, no, this was not state action. Well, I think that... I think you're really wasting valuable time on totally pointless line of argument. Thank you, and I will finish my thought if I can, though, and that is that I believe that there is a distinction in terms of keeping the peace by asking these people to go to the front gate, and it was at that location where Mr. Kloot, acting on behalf of the Festival Association, he is the one that informed them of the dress code, asked them to leave. So it's our argument that the only involvement of the city in this was to ask them to go from the interior of the festival to the front gate. For what violation? She was informed by Mr. Kloot that he would ask them to come back to the front gate because of a dress code issue. But the key question is, is moving these people from point A to B, is that a necessary ingredient to enforcing this dress code policy? Well, the key question is, assuming that she was a state actor, then what is the significance with respect to Manil liability on the part of the city? I mean, that's the question. I've been trying to get them to go there. I understand that. I'm just trying to get them to go there, too. All right. Very well, Your Honor. I submit that there is no insufficient indication of any policy or custom of the police to enforce a dress code policy, for the reason that the Manil opinion requires that the practice be so permanent and well settled as to constitute a custom or usage with the force of law. Well, as was suggested on the questioning of the plaintiff's counsel, the issue is whether or not there was some distinction. An issue is whether there is some distinction that the police officers understand, certainly Officer Bergman understood, as to enforcing selectively whatever it is that the festival security requests her to enforce. And if the practice and understanding of the police officers assigned to duty at the festival, like Officer Bergman, as she appeared to have understood, that if she's requested to move somebody to the front gate, as it were, she will do that regardless of the reason. Is that the practice? The police officers are there to enforce the laws of the state of California. Well, you just said, though, when I asked what was she moving them for, she said she moved them because of the dress code. Now, that's not the rule of the – that's not a law of the state. So where did she suddenly take it into her head that she had to be called to respond to that request? Well, the request was that they move from the interior to the gate. And while at the gate, that's where the police involvement stopped. Well, I'd like to let you – as Judge Kaczynski said, you're kind of slicing it. The fact on the ground was, as you kept insisting, is that she wasn't the one who was enforcing the dress code so much as simply moving them to the gate. But you also said that if they refused to comply, she would have then resorted to use of force. And I suppose that could have emerged even as deadly force if somehow one of them reached into his waistband and she thought he was about to pull a weapon. She could have shot, given the prior incidents of violence with motorcycle gangs. So where in the city's understanding of this practice or custom of having its police officers be at the festival, did it come to some conclusion as the scope of what the police officers were there to enforce? Your Honor, we've been surmised as to, under different facts, what might have happened. But I think when we're faced with the facts, what actually did happen was that none of those things occurred. And I think if you look at the reposition cases where it's frequently this type of a situation, and in particular the Miami-Dade City case that this 9th Circuit decided in 2005, there the officers presented the individual with a choice of either allow the repossession or go to jail. And this Court found that it was not state action. So I think that that is a key distinction in determining whether or not there's state action. And the Court had asked previously... In the Myers case, when did the officers get involved in the repossession? Before or after it was initiated? After. What happened here, as I understand it, is the officer was on site, was part of the mechanism to trigger what you're analogizing to repossession. So does that make a difference? The timing, of course, in Myers was at the end. The timing in our case was at the beginning. But Myers was not state action, nor is this, for the reason that when the policy is being enforced, it's being done by the private actor. I think you keep confusing state action with Monell liability, if I could interject here, because the officer is not an individual defendant, is that correct? That's correct. Okay. So the real question is, going back to the city, do you think it's a fair statement to say that the officers on duty, that the intention of having them there was to enforce not only the city laws and state laws, but also the Garlic Festival policies? No. Why not? Because there's nothing into the record of any testimony of any city person to say that the function of the Gilroy police at that location was to enforce a DRISCO policy. The Bergstrom deposition says that. She was aware of the policy. She at no time ever testified that it was her purpose and function to enforce the policy. But she did, in fact, enforce it. I mean, she did, and she was aware of the policy, and she did, in fact, enforce it as an employee of the police department. Well, that's why I disagree. I believe Mr. Kloot was the enforcer of the policy, not Officer Bergman. Well, she initiated the enforcement of the policy. She initiated the move. And actually, in response to a prior questioning, the court had asked what involvement the city had in the festival as a whole, and I can cite to the record at tab 15, page 19, this is a declaration of Greg Giusiana, who is the chief of police for the city of Gilroy at the time, and it states what other law enforcement were involved in this festival. Beginning at the bottom of page 9, it says, the city of Gilroy grants a permit to the association allowing the event to take place and has one of many public entities that provide police officers to maintain security, including Santa Clara County Sheriff's Department, California Highway Patrol, City of Morgan Hill, City of San Jose, and City of Hollister. The Gilroy police provide approximately 25% of the total security personnel for the festival. So this is not an event that is entirely dominated by the city of Gilroy, although very important to them, but I think that from the granting of the permit, from the involvement of police departments, law enforcement from many different agencies, does not translate what the Garg Festival does into an event that is embraced in its totality in every aspect of it by the city. They grant the permit, they keep the peace, and therefore, in our view, there's no liability based on that. Let me see this just so I get the picture. There was the head of security, right, who was in Mufti, right? I'm sorry, was in what? In Mufti. He was not in uniform. All right. And you said, or the court counsel said, there were other security guards, private security guards? I don't know that the record. There's a record of that? No, I believe the record is that I just indicated was about five or six different law enforcement agencies provide security at the time of this incident. That's not always my question. I'm sorry. Were there other private security guards patrolling the festival as far as the record reflects? Not to my knowledge. I have no knowledge either way on that. And this officer was an officer, Burkstone was an officer of the city of Gilroy. Correct. And she was patrolling the festival? Before she was asked to escort these plaintiffs, what was she doing? She was patrolling throughout the festival. She was patrolling. Yes. And the violation of the dress code is something that was brought to her attention by the security person. By Mr. Clute. It was she who stopped them. That's correct. Mr. Clute asked Officer Bergman to ask these people to return to the front gate. Presumably a uniformed officer patrolling this large mass of people, if she were to, just to make up something, smell marijuana or see a weapon or anything of that sort, that would be a violation of the law on her own authority. She would do what's appropriate, arrest or stop or question, whatever. Is there any indication that the uniformed officers did the same thing vis-à-vis violations of the policy? Not of the law, but of the policy. Let's say they see a booth that is extending farther than they are allowed or anything of that sort. Do they enforce that? Is there any indication they enforce that on their own? There's nothing in the record that suggests anything other than enforcement of the laws of the state. Well, isn't it, doesn't, going back to the officer, doesn't she say that, she asks, well, what if somebody came in a Nazi uniform, would that be a violation? Yeah, it would probably be a violation. And then she talks a little further about other gangs that may be prevalent in the area. The Norteños serve, and they have red and blue colors. So she goes on to say basically she takes her directions from Officer Kloot, and if she sees a violation, then she would, as I understood her testimony, she would be able to ask them to leave. So isn't she, as a police officer, enforcing the Garlic Festival's policy, or at least it raises a question as to whether she's acting under Sergeant Kloot's direction? Again, given different facts, had the officer been the sole actor involved in enforcing the policy, the dress code policy, then perhaps different conclusion. There is no indication that this officer has enforced any dress code, in our view, either at this time or on any prior occasions, or that any other officers of the police have enforced any dress code on any prior occasion. But would it matter under Monell if this officer were taking action because the officer believed that under the authority granted by the city and in your position as an officer of the city, that's what you're there to do, enforce the dress code, enforce the laws, enforce the policies. It's all one thing. That's what you're there to do. Global, you know, cradle-to-grave law enforcement for the Garlic Festival. I believe the important point of Monell is that there's no vicarious liability by the actions of a single police officer of a low rank. Unless? Unless it's been a policy or custom that's adopted by the department. And there's nothing in this record that suggests. Or the city. I'm sorry, correct, the city. There's nothing in this record that suggests either there was a policy adopted or any custom of enforcing a dress code. There are customs of cooperation in the event, but there is no evidence in this record that suggests that there was a custom of every time there's a dress code violation that it's the police that get involved and enforce it. So I think to go beyond that is surmising conjecture for issues that did not occur here. So I think in summary, Your Honors, we have no state action. I think you have about four minutes left. So can you just answer a question I have about the record I have? I don't know if I have a complete record. But what information is there in the record about the GGFA, about the association? I realize it's a nonprofit organization. But who runs it? Who sits on it? Who is it? Is there anything in the record that tells us anything like that? I'm not really aware of that, quite honestly. And that's sort of one of the points I want to make. We're dealing here with an appeal on the summary judgment motion. We don't really have a complete record. And listening to this, I'm hearing a lot of disputes. Well, you're supposed to adduce whatever you can in order to overcome the summary judgment. That is correct. Summary judgment wasn't based on this particular aspect. Summary judgment was summary judgment. So if there's any basis from which it can be granted, then one should have opposed it. It was. One of the questions on summary judgment is, are there material facts that go to the ultimate dispute that are agreed to? And clearly, as a matter of law, a lot of the questions aren't that factual. For example, the whole question of if you look at tab 17, page 33 to 35, you have the Bergen deposition on page 33 talking about how if granted to someone, if there was a question of something should or should not be permitted, not just a question of law. I'm sorry, where are you reading from? I'm sorry, on page 33, tab 17. It's a big page. Oh, okay, it's line about 14. Okay. Answer, basically, to exclude any type of group clothing that could create a problem. If there was any type of question on whether something should or should not be permitted, we could contact the supervisor and go through them with their decision. Clearly, she was there under this answer enforcing the decisions on clothing. The supervisor meaning the festival operator? Well, on page 33. I'm asking a question. The supervisor meaning she calls her dispatcher back at the station, or the supervisor means the people who run the festival? I think it is clarified a page or two later with Sergeant Klute. What are you asking us to take out of the part that you just quoted? The factual assertion, which seems to be an argument here in terms of what exactly they were enforcing and whether it was a policy or whether it was an individual decision. The question that was asked, which the answer was given that you just referred to, was what was your understanding of the dress code? That doesn't say anything about enforcing it. Well, no, I think she did say she would enforce it. And if she ran into a problem, would contact the supervisor in terms of what to do about it. Well, of course. Contact the supervisor in terms of what to do about it. That is, she wouldn't do diddly squat until the supervisor gave her his decision. And that supervisor was Sergeant Klute. So what? Certainly the assertion that this was a police matter and a police action in terms of enforcing a private dress code. So are there factual issues in terms of was that particular policy and was it an individual decision? Are things that the record does not show because there isn't a full factual record? Maybe because there can't be. I mean, the record is as the record is. This record either creates a triable issue or it doesn't. It would certainly seem to based on the dispute of factual matters that apply here. So I'm worried. I looked at Sutton versus Providence, and it seems to me you have to have one of four tests in order to make the entity that you have be a state actor. I couldn't find it under public function, couldn't find it under joint action, couldn't find it under coercion, and couldn't find it under nexus. Where are you going to go? Those are the four. Well, I would disagree with the question of nexus, considering the location, considering the... If we look at nexus and we look at the issues about nexus, how are we going to get there when the situation involved, the best you have is that one person who you're arguing and then goes with their boss to tell them what to do, takes them to the gate, and then the person who is charged with sending them out or keeping them is the one who does it. That's the best you have. I put it in the most positive light I can for you because you want him to be the boss, not just the guy who's there with another hat on. You want him to take them to the gate, then the police back off and do nothing, while the supervisor, who you suggest is the boss, does something. There's a Tenth Circuit case that says that if police go through and find people who are doing things that ought not to be and bring them to the gate and stand and watch others do what needs to be done, search or whatever, that that is not a state function. That's the Neil Young concert case. If you have the situation here where they are, in fact, police enforcing a DRESCO policy in a public park that is traditional public forum, you have a fair amount of state action. And the question of is it policy, is it on the Manila liability standards, is, I think, a factual question. But the idea that somehow or other they were not having that intertwining of state action by police and quasi-private kind of activity is, I think, a very serious question. I think it goes more towards the nexus than anything else. Thank you. The case is argued. We stand submitted. Thank you. Good job.
judges: Kozinski , O'Scannlain , Rymer , Thomas , McKeown , Wardlaw , Fisher , Gould , Paez , Callahan , R. Smith